**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING**

**RYAN LEE WILLIAMS,**

Plaintiff,

**v.**                                              **CIVIL ACTION NO.: 5:17-CV-65
(STAMP)**

**NANCY A. BERRYHILL,
Acting Commissioner of Social Security,**

Defendant.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

In this social security appeal, Plaintiff Ryan Lee Williams ("Plaintiff") challenges

the Social Security Administration's ("the SSA") redetermination that he is no longer

eligible to receive the supplemental security income ("SSI") that he received as a child

because he is not disabled under the rules governing adults. As Plaintiff's challenge

proceeded through the administrative process, a United States Administrative Law

Judge ("the ALJ") concluded that Plaintiff is no longer disabled within the meaning of the

Social Security Act ("the Act"). Now, Plaintiff seeks judicial review of the ALJ's decision.

Because the ALJ's decision is supported by substantial evidence, the undersigned

recommends that Plaintiff's Motion for Summary Judgment be denied and Defendant's

Motion for Summary Judgment be granted.

### II.   PROCEDURAL HISTORY

Plaintiff received SSI because he was disabled as a child. R. 33. When Plaintiff

turned eighteen, the SSA was required to "redetermine" Plaintiff's eligibility for those

benefits using the rules governing adults. Under those rules, the SSA determined that Plaintiff no longer qualified for SSI and informed him of the same. R. 39–44. After a disability hearing, that determination was upheld on reconsideration. R. 47–49. Plaintiff then filed a written request for a hearing before an ALJ. R. 51. On August 31, 2015, a hearing was held before the ALJ in Morgantown, West Virginia. R. 19, 887–927. Plaintiff, represented by counsel Harold Bailey, Jr., Esq., and Larry Ostrowski, Ph.D., an impartial vocational expert, appeared and testified. R. 19. A subsequent hearing was held on February 1, 2016, where Plaintiff, again represented by counsel Mr. Bailey, Dr. Ostrowski, and Richard Gross, Ph.D., an impartial medical expert, appeared and testified. R. 19, 824–86. Approximately two months later, the ALJ issued a decision concluding that Plaintiff was no longer disabled within the meaning of the Act. R. 19–32. On March 23, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of Nancy A. Berryhill, the Acting Commissioner of Social Security ("the Commissioner"). R. 8–11.

On May 17, 2017, Plaintiff, through counsel Brian D. Bailey, Esq. ("Counsel" or "Plaintiff's Counsel"), filed a Complaint in this Court to obtain judicial review of the Commissioner's final decision pursuant to Section 205(g) of the Act, as amended, 42 U.S.C. § 405(g) (2015). Compl., ECF No. 1. The Commissioner, through counsel Helen Campbell Altmeyer, Assistant United States Attorney, filed her Answer and the Administrative Record of the proceedings on September 22, 2017. Answer, ECF No. 10; Admin. R., ECF No. 11. Soon thereafter, Plaintiff and the Commissioner filed their cross motions for summary judgment and supporting briefs on October 18, 2017, and November 16, 2017, respectively. Pl.'s Mot. Summ. J., ECF No. 14; Def.'s Mot. Summ.

J., ECF No. 15. Plaintiff then filed a self-titled response to the Commissioner's supporting brief on November 29, 2017.[1] Pl.'s Resp. Def.'s Br. Supp. Mot. Summ. J., ECF No. 17.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule of Civil Procedure 9.02(a). Having reviewed the parties' motions and the administrative record, the undersigned now issues the following Report and Recommendation.

### III.   THE FIVE-STEP EVALUATION PROCESS

"In cases where, as here, a claimant who was awarded disability benefits as a child attains eighteen years of age, the SSA . . . redetermines the claimant's eligibility for benefits." Faint v. Colvin, 26 F. Supp. 3d 896, 906 (E.D. Mo. 2014) (citing 20 C.F.R. § 416.987). "The rules used for these 'age–18 redeterminations' are those applicable to adult claimants who file new applications for benefits, that is, the rules set out in 20 C.F.R. § 416.920(c)-(g)." Id. (citing 20 C.F.R. § 416.987(b)). "Accordingly, the framework used by the Commissioner in age–18 redetermination cases is that familiar five-step sequential analysis for reviewing new adult applications for disability, except that whether the claimant is engaged in substantial gainful activity is not considered." Id. at 906–07 (citing same).

So, to redetermine whether Plaintiff—who turned eighteen on May 30, 2013—is disabled within the meaning of the Act,[2] the SSA uses the following five-step sequential analysis (except for step one):

---

[1] See infra note 8.

(i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled.

(ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement [of twelve months] . . . or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.

(iii) At the third step, we also consider the medical severity of your impairments(s). If you have an impairment(s) that meets or equals one of our listings . . . and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §§ 404.1520(a), 416.920(a). "If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity [("RFC")] based on all the relevant medical and other evidence in your case record, as explained in § 404.1545." 20 C.F.R. §§ 404.1520(e), 416.920 (e).

(iv) At the fourth step, we consider our assessment of your [RFC] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.

(v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

---

[2] To be disabled under the Social Security Act, a claimant must meet the following criteria:

[The] individual . . . [must have a] physical or mental impairment or impairments . . . of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. . . . '[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

20 C.F.R. §§ 404.1520(a), 416.920(a).

In steps one through four, the burden is on the claimant to prove that he or she is disabled and that, as a result of the disability, he or she is unable to engage in any gainful employment. Richardson v. Califano, 574 F.2d 802, 804 (4th Cir. 1978). Once the claimant so proves, the burden shifts to the Commissioner at step five to demonstrate that jobs exist in the national economy that the claimant is capable of performing. Hicks v. Gardner, 393 F.2d 299, 301 (4th Cir. 1968). If the claimant is determined to be disabled or not disabled during any of the five steps, the process will not proceed to the next step. 20 C.F.R. §§ 404.1520, 416.920.

## IV.   ADMINISTRATIVE LAW JUDGE'S DECISION

In his decision, the ALJ first noted that Plaintiff turned eighteen on May 30, 2013, and was eligible to receive SSI as a child in the month preceding his eighteenth birthday. R. 21. The ALJ then noted that the SSA informed Plaintiff "that he was found no longer disabled as of October 1, 2013, based on a redetermination of disability under the rules for adults who file new applications."[3] R. 21. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: insulin dependent diabetes mellitus, expressive and reception language delays, borderline intellectual functioning, adjustment disorder, learning disorder, and auditory processing disorder. R. 21. At step three, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that meet or medically equal the severity of one of the listed impairments. R. 21–24. Then, the ALJ determined that Plaintiff has:

---

[3] Because this case involves the redetermination of Plaintiff's eligibility for benefits he received as a child, the ALJ did not consider whether Plaintiff engaged in substantial gainful activity. 20 C.F.R. § 416.987(b).

the [RFC] to perform light work . . . that: requires no climbing of ladders, ropes, or scaffolds; requires no more than occasional balancing and no more than frequent climbing ramps/stairs, crawling, crouching, stooping, or kneeling; avoids concentrated exposure to excessive noise and all exposure to hazards such as dangerous machinery and unprotected heights; is limited to simple (1-2 step), routine, and repetitive tasks performed in a low stress job defined as having only occasional decision making required, occasional changes in the work setting and no strict production quotas; involves no more than occasional interaction with coworkers, supervisors, and the public; and requires no complex written or verbal communication or frequent verbal communication.

R. 24, 24–31. At step four, the ALJ determined that Plaintiff has no past relevant work. R. 31. Then, at step five, the ALJ concluded that Plaintiff is capable of performing other jobs in the national economy that exist in significant numbers. R. 31–32. Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Act. R. 32.

## V.   DISCUSSION

### A.   Scope of Review

In reviewing an administrative finding of no disability, the scope of review is limited to determining whether the ALJ applied the proper legal standards and whether the ALJ's factual findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). A "factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Likewise, a factual finding by the ALJ is not binding if it is not supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is "'such relevant evidence as a reasonable mind might accept to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the United States Court of Appeals for the Fourth Circuit has stated that substantial evidence "consists of more than a mere

6

scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a jury verdict were the case before a jury, then there is 'substantial evidence.'" Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). When determining whether substantial evidence exists, a court must "not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (citation omitted).

**B.      Contentions of the Parties**

In his motion for summary judgment, Plaintiff argues that the ALJ's decision is not supported by substantial evidence. See generally Pl.'s Br. Supp. Mot. Summ. J., ECF No. 14-1. Specifically, Plaintiff avers that (1) the ALJ's reliance on the opinions of Richard Gross, Ph.D., James Capage, Ph.D., and Joseph A. Shaver, Ed.D., is not supported by the ALJ's own findings or the factors set forth in 20 C.F.R. § 404.927, and (2) the ALJ's reasons for discrediting Rodney McCullough, an independent evaluator, and Jeremy Soule, M.D., are contradicted by the record. Id. at 4–15.  Based on these alleged errors, Plaintiff asks this Court to remand his claim for calculation of benefits or, in the alternative, for further proceedings. Id. at 15.

Conversely, the Commissioner argues that the ALJ's decision is supported by substantial evidence. See generally Def.'s Br. Supp. Mot. Summ. J, ECF No. 16. More specifically, the Commissioner avers that substantial evidence supports the ALJ's evaluation of the medical source opinions of Dr. Gross, Dr. Capage, and Dr. Shaver. Id. at 5–12. The Commissioner also argues that substantial evidence supports the ALJ's evaluation of the opinions from Mr. McCullough and Dr. Soule. Id. at 12–14.

Accordingly, the Commissioner requests this Court to grant her summary judgment and affirm the ALJ's decision. Id. at 15. The undersigned addresses each argument, in turn, below.

**C.    The ALJ's Decision is Supported by Substantial Evidence**

**1.  The ALJ Properly Evaluated and Relied on the Opinions of Dr. Gross, Dr. Capage, and Dr. Shaver**

Plaintiff argues that the ALJ's reliance on the opinions of Dr. Gross, Dr. Capage, and Dr. Shaver is not supported by the ALJ's findings or the factors set forth in 20 C.F.R. § 404.927 for no less than seven reasons. Each is without merit.

**a.    Severe Versus Non-Severe Impairments**

Plaintiff argues that the ALJ should not have relied on—and given great weight to—Dr. Gross's medical opinion because the ALJ concluded that Plaintiff suffers from several severe impairments, but Dr. Gross concluded that those same impairments are not severe. ECF No. 14-1 at 4–5. Assuming that this is error, Plaintiff fails to identify or explain how he is prejudiced as a result. Id. at 4–5; ECF No. 17 at 2. For example, Plaintiff does not explain how this error might reasonably change the outcome of the ALJ's disability determination. Id. at 4–5; ECF No. 17 at 2. It is well established that "the party that 'seeks to have a judgment set aside because of an erroneous ruling carries the burden of showing that prejudice resulted.'" Shineski v. Sanders, 556 U.S. 396, 409 (2009) (citations omitted). Because Plaintiff fails to explain how he has been prejudiced, the undersigned concludes that the ALJ's error is harmless. Accordingly, remand is not necessary or appropriate. See McIntire v. Colvin, No. 3:13–CV–143, 2015 WL 4011007, at *48 (N.D. W. Va. Jan. 28, 2015)  ("Under the harmless error doctrine, '[t]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the

8

record that the ALJ's error was inconsequential to the ultimate nondisability determination.'" (citations omitted)).

> **b.     Evaluating Medical Opinions Under 20 C.F.R. § 416.927**

Next, Plaintiff argues that the ALJ did not evaluate Dr. Gross's medical opinion as required by 20 C.F.R. § 416.927. ECF No. 14-1 at 5–6. In support, Plaintiff suggests that Dr. Gross should not have been considered a specialist in psychology because he is not board certified. Id. at 5. Plaintiff also argues that Dr. Gross did not review the "record as a whole" or all of the relevant medical evidence of record as ostensibly required. Id. at 5–6. And Plaintiff argues that Dr. Gross is not credible because he works for the Social Security Administration and testifies for the Office of Disability Adjudication & Review ("ODAR"). Id. at 5; ECF No 17 at 4–6. These arguments are without merit.

First, § 416.927 does not require that a doctor be board certified in order for his medical opinion to be given additional weight if it relates to his or her specialization. Rather, board certification is just "an added prestige upon which ALJs tend to rely." Garcia v. Colvin, No. 12–06542–MAN, 2014 WL 358396, at *3 (C.D. Cal. Jan. 30, 2014) (citation omitted). Therefore, Plaintiff's argument that the ALJ should not have given Dr. Gross's psychological opinion additional weight simply because he is not a board-certified psychologist is without merit.

Second, Plaintiff's argument that Dr. Gross did not review the "record as a whole" as required is based on a fundamental misunderstanding of the "consistency" prong of § 416.927. The consistency prong merely states that "the more consistent a medical opinion is with the record as a whole, the more weight [the SSA] will give to that medical

opinion." 20 C.F.R. § 416.927(c)(4). It does not require a doctor to review all of the medical evidence before rendering an opinion. Id. So, Plaintiff's argument is without merit.

Third, "[i]t is well established that medical and vocational experts are not biased, or their opinions unreliable, simply because the SSA compensates them for their services." Simmons v. Berryhill, No. 5:17–CV–25, 2017 WL 8777460, at *5 n.10 (N.D. W. Va. Dec. 22, 2017) (citing Nichols v. Comm'r Soc. Sec. Admin., 260 F. Supp. 2d 1057, 1070 n.37 (D. Kan. 2003) (citing Borrero Arce v. Finch, 307 F. Supp. 1071, 1074–75 (D.P.R. 1969))), adopted by Simmons v. Comm'r Soc. Sec. Admin., No. 5:17CV25, 2018 WL 369695 (N.D. W. Va. Ja. 11, 2018); Cloud v. Berryhill, No. 3:17–CV–35, 2017 WL 7101266, at *9 n.4 (N.D. W. Va. Oct. 17, 2017) (citing same), adopted by Cloud v. Berryhill, No. 3:17-CV-35, 2018 WL 606139 (N.D. W. Va. Jan. 29, 2018). Accordingly, this argument is too without merit.[4]

### c.   Dr. Capage

Next, Plaintiff argues that Dr. Capage's opinion is unreliable because he did not evaluate Plaintiff's "12.10-type" impairments. ECF No. 14-1 at 6–7. In addition, Plaintiff argues that Dr. Capage's opinion is unreliable because he did not consider all of the relevant evidence and, instead, just signed off on a form. Id. at 7–8. These arguments are unavailing.

---

[4] Here, it is important to note that Plaintiff's Counsel raised the same meritless argument in Simmons. 2017 WL 8777460, at *5 n.10. And when Counsel signed Plaintiff's briefs in this case, Counsel certified that "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Put simply, arguing that Dr. Gross is not credible simply because he works for and is paid by the SSA or ODAR is not a legal contention that is warranted by existing law. Nor does Counsel urge this Court to reverse Simmons or establish new law. Therefore, Counsel is reminded of the possible consequences under Rule 11—including Rule 11(c)(1) and (c)(3)—if he raises it, again, in this Court.

First, it is well settled that an argument not raised in a motion for summary judgment is waived. Here, Plaintiff argues that Dr. Capage did not evaluate Plaintiff's 12.10-type impairments, id. at 6–7, but he does not argue that he satisfies Listing 12.10 (or any other 12.10-type listing), see generally id.; ECF No. 17. And if Plaintiff does not satisfy a 12.10-type impairment, then Dr. Capage's opinion is not unreliable—and entitled to less weight—for failing to discuss the same. Even if it was entitled to less weight, that is exactly what the ALJ decided to give it. Indeed, the ALJ gave Dr. Capage's medical opinion only "partial weight" because the ALJ determined that Plaintiff has moderate—not just mild—limitations in social functioning caused by speech and language deficits. R. 29.

Second, Dr. Capage is not required to review all of the evidence of record. Again, the consistency prong does not require a doctor to review all of the medical evidence before rendering an opinion. 20 C.F.R. § 416.927(c)(4). It merely states that "the more consistent a medical opinion is with the record as a whole, the more weight [the SSA] will give to that medical opinion." Id. If anything, Dr. Capage's medical opinion was entitled to less weight because it was not entirely consistent with the record as a whole. But as set forth above, the ALJ only gave Dr. Capage's opinion partial weight for that reason. R. 29. Indeed, Dr. Capage opined that Plaintiff has mild limitations in social functioning and moderate limitations in concentration, persistence, and pace. R. 29. The ALJ gave this opinion only partial weight because the ALJ determined that Plaintiff has moderate—not just mild—limitations in concentration, persistence, and pace. R. 29.

Third, Plaintiff's reliance on Murphy v. Commissioner of Social Security Administration, No. 5:16CV27, 2017 WL 959580 (N.D. W. Va. Mar. 13, 2017) is

11

misplaced. Specifically, Plaintiff cites <u>Murphy</u> for the proposition that a "doctor's opinion is less reliable when [sic] record supports [sic] reasonable inference that [sic] doctor merely signed off on document." ECF No. 14-1 at 8. But in <u>Murphy</u>, the ALJ made a reasonable inference based on the evidence of record that the physician was not actively involved in that plaintiff's treatment and simply signed off on a form completed by his physician's assistant. 2017 WL 959580, at *4. Here, there is no evidence of record to suggest that Dr. Capage simply signed off on a form completed by someone else. Rather, Plaintiff takes issue with the fact that Dr. Capage's opinion preceded other relevant evidence of record. ECF No. 14-1 at 8. But as the Commissioner aptly notes in her brief, state agency review often precedes completion of the record. <u>Chandler v. Comm'r of Soc. Sec.</u>, 667 F.3d 356, 361 (3d Cir. 2011) ("[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision."). Therefore, the relevant inquiry is whether Dr. Capage's opinion is entitled to weight because a significant change occurred in Plaintiff's condition after Dr. Capage issued his opinion "that reasonably would affect its validity." <u>Hampton v. Colvin</u>, No. 1:14–cv–24505, 2015 WL 5304294, at *22 (S.D. W. Va. Aug. 17, 2015). Assuming that answer is yes, the undersigned finds no error because the ALJ discounted Dr. Capage's opinion, only giving it partial weight. R. 29.

Because the ALJ's decision to discount Dr. Capage's opinion is supported by substantial evidence, the undersigned finds no error. [5]

---

[5] To the extent Plaintiff questions the reliability of Dr. Capage simply because he works for and is paid by the SSA, that argument is without merit for the reasons set forth in Section V.C.1.b. In addition, Plaintiff is again reminded of the possible consequences—under Rule 11—for raising said argument in the future. <u>See</u> <u>supra</u> note 4.

####    d.    Dr. Shaver

Fourth, Plaintiff argues that Dr. Shaver's opinion is unreliable because he did not

review all of the relevant evidence of record and indicate what evidence he reviewed or

what 12.10-type medical impairments were considered. ECF No. 14-1 at 8. This

argument similarly rings hollow.

First, Dr. Shaver is not required to cite and discuss all of the evidence that he has

reviewed and considered. Plaintiff cites no legal authority for that proposition and fails to

identify what evidence—if any—Dr. Shaver did not review before affirming his medical

opinion dated August 29, 2013. R. 570. Second, Plaintiff does not argue that he

satisfies a 12.10-type listing, so Dr. Shaver's failure to discuss the same is harmless, if

anything. Put simply, the ALJ was required to weigh Dr. Shaver's opinion against the

relevant evidence of record and determine what weight that opinion was entitled. Here,

the ALJ did just that. After comparing Dr. Shaver's opinion with the record as a whole,

the ALJ determined that Dr. Shaver's opinion deserved only partial weight because

Plaintiff suffers from moderate—not just mild—limitations in social functioning. Because

that determination is supported by substantial evidence, the undersigned finds no error.[6]

####    e.    Dr. Franyutti & Dr. Lateef

Fifth, Plaintiff inexplicably argues here that the ALJ should have given no

weight—rather than not great weight—to the opinions of Fulvio Franyutti, M.D., and

Atiya Lateef, M.D., because they were not qualified to review Plaintiff's mental

---

[6] To the extent Plaintiff questions the reliability of Dr. Shaver simply because he works for and is paid by
the SSA, that argument is without merit for the reasons set forth in Section V.C.1.b. In addition, Plaintiff is
again reminded of the possible consequences—under Rule 11—for raising said argument in the future.
See supra note 4.

impairments.[7] ECF No. 14-1 at 9. Although this may be true, nothing in the ALJ's opinion suggests that the ALJ gave any credence to Dr. Franyutti's and Lateef's evaluations of Plaintiff's mental impairments. See R. 19–32. Indeed, the ALJ considered but gave not great weight to Dr. Franyutti's opinion that Plaintiff's diabetes mellitus is a non-severe impairment and causes no limitations and Dr. Lateef's opinion that Plaintiff has limitations with balancing and climbing and could not be exposed to hazards. R. 27. Although these opinions are consistent with evidence of Plaintiff's physical activities (e.g., "playing football and basketball and lifting weights"), the ALJ decided to give these opinions not great weight and, instead, give Plaintiff the benefit of the doubt that he is "limited to the light exertional work prescribed in the residual functional capacity." R. 27. Because there is no evidence to suggest that the ALJ gave credence to Dr. Franyutti's and Dr. Lateef's evaluations of Plaintiff's mental impairments, the undersigned finds no error.

### f.   Evaluating Medical Opinions Under 20 C.F.R. § 404.927

Sixth, Plaintiff argues that the ALJ did not evaluate the medical opinions based on the requirements of 20 C.F.R. § 404.927. ECF No. 14-1 at 9–10. But § 404.927 does not set forth requirements or factors for evaluating medical opinions. See 20 C.F.R. § 404.927. Instead, it sets forth the effect of an expedited appeals process agreement. Accordingly, Plaintiff's argument is without merit, and the undersigned finds no error.

---

[7] This is inexplicable because the argument has nothing to do with whether the ALJ's reliance on the opinions of Drs. Gross, Capage, and Shaver is supported by substantial evidence.

### g.    Calling Medical Expert to Testify at Hearing

And seventh, Plaintiff argues that the ALJ abused her discretion by calling a medical expert to "clean up" errors made by Disability Determination Services. ECF No. 14-1 at 10–11. Surely not.

It is well within the ALJ's discretion "to seek the assistance of a medical expert." Boggs v. Astrue, No. 2:12–CV–25, 2012 WL 5494566, at *7 (N.D. W. Va. Nov. 13, 2012) (citing HALLEX I–2–5–32 (Sept. 28, 2005)). For example, HALLEX I–2–5–34, sets forth no less than eleven reasons why an ALJ may need to obtain a medical expert's opinion. Three of those reasons are: (1) to determine the severity of a claimant's physical or mental impairments; (2) to clarify and explain evidence because it is contradictory, inconsistent, or confusing; and (3) to determine a claimant's RFC by explaining the claimant's functional limitations or abilities based on the medical evidence of record. HALLEX I–2–5–34 (Sept. 28, 2005).

Here, the ALJ requested Dr. Gross do just that. Indeed, when the ALJ informed Dr. Gross that his testimony would focus on clarifying or interpreting the medical evidence of record, the ALJ specifically said that he may be asked to testify about: "(1) the validity of the diagnoses or prognoses reflected in the evidence: [sic] (2) the degree of the claimant's dysfunction as of the period to be considered . . . , and (3) a medical assessment of the claimant's physical and /or [sic] mental capacity." R. 100. Because it was within the ALJ's broad discretion to seek the assistance of Dr. Gross, the undersigned concludes that the ALJ did not abuse her discretion by doing just that. In fact, had the ALJ not called Dr. Gross to testify, she could have (arguably) failed to satisfy her obligation to fully develop the administrative record. See, e.g., Johnson v.

Barnhart, 66 Fed. App'x 285, 289 (3rd Cir. 2003) (noting that despite the ALJ's broad discretion to call a medical expert, "the ALJ should do so in order to meet his obligation of fully developing the administrative record").

In short, the ALJ's limited reliance on the opinions of Drs. Gross, Capage, and Shaver is supported by substantial evidence. Accordingly, the undersigned finds no error.

### 2. The ALJ Properly Discredited the Opinions of Mr. McCullough and Dr. Soule

Plaintiff argues that the ALJ's reasons for discrediting Mr. McCullough and Dr. Soule are contradicted by the record for three reasons: First, Mr. McCullough's opinion is reliable because Plaintiff cannot monitor his blood sugar. ECF No. 14-1 at 11–12. Second, Plaintiff's ability to monitor his blood sugar is severely impaired. Id. at 12–14. And third, Mr. McCullough's opinion that Plaintiff cannot interact appropriately with others is supported by the evidence, which the ALJ ostensibly ignored. Id. at 14–15. Each is without merit.

First, although Plaintiff claims that the ALJ's reasons for discounting Dr. Soule's opinion are contradicted by the record, Plaintiff does not cite even one of those reasons in the four ensuing pages that supposedly support his argument. Id. at 11–15. Indeed, in those four pages, Dr. Soule is only mentioned twice: Once to say that "Dr. Soule's opinion as well as Dr. Soule's treatment notes [] show Dr. Soule [was] trying different medications to get [Plaintiff's] diabetic problem under control." Id. at 12 (citing R. 804). And once to say that Dr. Gross agreed that Dr. Soule indicated [that Plaintiff] cannot manage his diabetes." Id. at 13 (citing R. 866–67). Neither statement explains how or why the ALJ erred by discounting Dr. Soule's opinion. Even if they did, Plaintiff's

16

argument is unavailing. The ALJ discounted Dr. Soule's opinion because it did not explain how Plaintiff's condition affected his ability to work. R. 27. Further, the ALJ explained that Dr. Soule's opinion that Plaintiff could not monitor his own blood sugar was contradicted by evidence of record, including a report from Plaintiff's teacher that Plaintiff tests his own blood sugar and administers his own insulin. R.27. In addition, the ALJ explained that Dr. Soule's treatment notes regarding Plaintiff's "disability" were based on Plaintiff's self-reported unemployment status, not a medical diagnosis. R. 27. Therefore, substantial evidence supports the ALJ's decision to discount Dr. Soule's opinion.

Second, the ALJ's thorough and well-reasoned explanation discounting the opinion of Mr. McCullough did not ignore or mischaracterize the evidence. Indeed, the ALJ weighed conflicting evidence and explained why Mr. McCullough's opinion was entitled to little weight. R. 29–30. Specifically, the ALJ explained that Mr. McCullough's opinion that Plaintiff needs "constant supervision" and would not be able to function in a work setting was contradicted by a plethora of evidence demonstrating Plaintiff's ability to function without supervision, including his various activities of daily living (which include driving, lifting weights, and playing basketball and football) and working at McDonalds. R. 29. The ALJ further explained that Mr. McCullough's opinion that Plaintiff cannot manage his own blood sugar was contradicted by a 2010 IEP report that indicated that Plaintiff was able to test his own blood sugar and administer insulin when needed. R. 29–30. Furthermore, the ALJ explained that there was no evidence showing that Plaintiff's cognitive ability worsened since that time, and Plaintiff himself reported testing his own blood sugar four times a day. R. 30. In addition, the ALJ explained that

Mr. McCullough's opinion that Plaintiff cannot interact appropriately with others was contradicted by the evidence showing Plaintiff has friends and a girlfriend and plays interactive sports with said friends. Not to mention there is no evidence to suggest that Plaintiff failed to appropriately interact with coworkers at McDonald's. R. 30. Finally, the ALJ discounted Mr. McCullough's opinion because it was not sought in Plaintiff's normal course of treatment, but only at the request of his attorney for the purpose of securing benefits. R. 30.

Despite this well-reasoned analysis, Plaintiff effectively disagrees with how the ALJ weighed conflicting evidence and asks this Court to reverse that determination. But in no uncertain terms, the Fourth Circuit has said that courts must "not undertake to reweigh conflicting evidence . . . or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (citation omitted). Because substantial evidence supports the ALJ's decision to discount Mr. McCullough's opinion, the undersigned declines Plaintiff's invitation to do just that and finds no error.

In sum, the ALJ's decision is supported by substantial evidence.[8]

---

[8] Two unrelated points:

First, the undersigned does not address Plaintiff's reply brief because it is untimely. Although Plaintiff's reply is self-described as "Plaintiff's Response to the Defendant's Brief in Support of Her Motion for Summary Judgment," this Court's Order [ECF No. 13] Directing Filing of Briefs Pursuant to LR Civ P 9.02 did not authorize Plaintiff to file a response brief. That order only allowed Plaintiff to file a reply to the Commissioner's brief within five days of service. The Commissioner filed her motion and supporting brief on November 16, 2017. ECF Nos. 15, 16. So, Plaintiff's reply was due five days later, on November 21, 2017. But Plaintiff did not file his reply until November 29, 2017. Because Plaintiff did not file his reply before the November 21, 2017 deadline, his reply is untimely and will not be considered. Even if it was timely, the undersigned would still not address all of the arguments raised for the first time in Plaintiff's reply because they are waived.

Second, because there is no error in the ALJ's decision requiring remand, the undersigned does not consider whether remand to a new ALJ is appropriate.

## VI. <u>RECOMMENDATION</u>

For the foregoing reasons, I find that the Commissioner's decision is supported by substantial evidence. Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [ECF No. 14] be **DENIED**, Defendant's Motion for Summary Judgment [ECF No. 15] be **GRANTED**, the decision of the Commissioner be **AFFIRMED** and this case be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file written objections identifying the portions of the Report and Recommendation to which objections are made and the basis for such objections with the Clerk of the Court. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. <u>See</u> 28 U.S.C. § 636(b)(1); <u>Wright v. Collins</u>, 766 F.2d 841, 845-48 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>see also</u> <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

The Court directs the Clerk of the Court to provide a copy of this Report and Recommendation to all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia. Further, because this Report and Recommendation completes the referral from the District Court, the Clerk is directed to terminate the Magistrate Judge association with this case.

Respectfully submitted this 16th day of May, 2018.

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE